(Superior Court of Cincinnati.)
General Term, July, 1897.

ROBERT M. LILLARD v. WM. M. AMPT, ON BEHALF OF THE CITY OF CINCINNATI.

---

*Superintendent and janitors of City Hall of Cincinnati—Power of Board of Legislation to confer appointive power on city clerk.*

Under sec's. 1755 to 1764 Rev. Stats., the city clerk has no power and can not be clothed by ordinance with power to appoint a superintendent and janitors of the City Hall. If under sec's. 2561 2. Rev. Stats., the board of legislation has power to appoint a superintenden* and janitors of the City Hall, it must itself exercise such power. and can not delegate it. Held, however, that such power under sec. 2560 to 2562, only exists where it becomes necessary to construct or add to a city hall, and that these sections have no application when the hall is completed.

Under the new charter of Cincinnati, the legislative, executive and administrative functions of the city government are distinct and independent of one another, and the board of legislation must confine its labor to matters which are purely legislative. To this end the appointing powers are conferred upon the executive or administratrive departments respectively, and this applies to all city officers and employes.

---

SMITH, J.

This is a proceeding in error to reverse the judgment of the court in special term.

The action below was brought by Wm. M. Ampt, a tax-payer and citizen of the city of Cincinnati, under sec. 1778 of the Rev. Stats. of Ohio, to enjoin the auditor and treasurer of said city from making payment to Robert W. Lillard, for services rendered by him to said city as superintendent of the city hall, to which position he had been appointed by the city clerk under an ordinance authorizing said appointment, and passed by the board of legislation in April, 1897.

The petitioner alleged that the ordinance was null and void because the board of legislation had no power to confer such appointing power upon the city clerk; and for the further reason, that inasmuch as the mayor neither signed nor vetoed the ordinance, he should have retained it for consideration

during a period of ten days, whereas he returned the same to the board of legislation before the expiration of ten days.

The defendant, Robert W. Lillard, filed an answer admitting his appointment by the city clerk, alleging that the ordinance was valid and asking that the petition be dismissed.

The greater part of the argument of counsel has been with reference to the first ground upon which the validity of the appointment is attacked, viz:—the want of power in the board of legislation to confer such appointing power upon the city clerk, and that question may therefore very properly receive our first consideration.

The claim of counsel for plaintiff in error, that the board of legislation has the power to confer he appointing power upon the city clerk is based upon the provisions of secs. 2560, 2561, and 2562 of the Rev. Stats. These sections which are part of the chapter in the municipal code relating to public halls, are as follows:

"Sec. 2560—All the power herein conferred on the council in relation to the erection, enlargement, improvement and completion of any public hall, shall apply to and be conferred on council in the erection, enlarging, improving and completing any addition to any public hall now owned by the corporation or which may be hereafter erected."

This section has no bearing upon the question at issue. Its purpose is simply to grant to council when erecting an addition to a public hall the same powers as it possesses when erecting the original structure.

Sec. 2561, is as follows:

"For the complete execution of the powers in this chapter granted, the council may appoint a superintendent, or architect, or both, and such other persons as may be deemed necessary, and provide for the making of all necessary contracts, and prescribe rules and regulations for the government of all such employes."

It is not entirely clear, that the grant of power in this section, extends beyond the time when the building is completed, but it is not necessary to examine the section critically, to determine whether this is the proper construction of it or not, because the next section, sec. 2562, clearly places the control of the hall when finished under the control of council. The section reads as follows:

"Such hall when completed shall be under the control of the council, and the council shall have the same power in relation to the preservation and repair thereof as in its original construction or improvement."

Conceding for the sake of argument as is claimed by counsel for plaintiff in error, that these sections are unaffected by any subsequent legislation and that they are in full force today, it would perhaps necessarily follow that council would have the power to appoint a superintendent or any other employes it deemed best to keep clean and preserve the building But this is the limit to which the claim of plaintiff in error could

be carried, for it nowhere appears in these sections, that council could delegate this power of appointment to the city clerk or any other officer of the municipal corporation, because the exercise of the appointing power necessarily involves the exercise of discretion, and the principle of law is elementary that where such a power is granted to an officer or a board of officers, the law is satisfied only by the exercise of the power by the officer or officers to whom it is granted; and that the exercise of the power cannot be delegated by such officers to any one else.

The attempt of the board of legislation therefore, to delegate by an ordinance its power of appointment, would necessarily fail, and the ordinance by which such attempt was to be made effective, would necessarily be a nullity.

But the ordinance would be null and void not merely because the board of legislation could not relieve itself of the obligation which the statute had imposed upon it, but also for the reason that the city clerk was in law incapable of being invested with such a power.

The city clerk is an officer created by the municipal code with well defined duties. (Secs. 1755 to 1764, Inc.) Secs. 1728, 1729. In none of these sections defining his duties, is there anything to be found which would give color to a claim that the clerk has power or may be clothed by ordinances with power to appoint a superintendent and janitors of a public or city hall.

It is true that it is suggested that the first part of sec. 1762, grants to council the power to clothe the clerk with this power, but we are of the opinion that the suggestion is without merit. The part of the section referred to, is as follows:

"In corporations in which there is no city auditor, the clerk shall perform the duties of auditor under the direction of the council, and such other duties pertaining to his office as may be prescribed by the council."

The suggestion is, that the clause "and such other duties pertaining to his office as may be prescribed by the council" affords to council the basis for legislation by ordinance imposing upon the clerk such an appointing power as is conferred in the ordinance under examination.

The first inquiry that arises is: Has this clause any application to municipal corporations other than those in which there is no city auditor; and therefore, as this city has a city auditor, has it any application to this city?

We pass by this inquiry without answering it, because assuming that the clause refers to all municipal corporations, we think it cannot be made the basis of a claim that the clerk can by ordinance be invested with such power as is given him under this ordinance.

The declaration in the statute is that "the clerk shall perform * * * such other duties pertaining to his office as may be prescribed by the council", "unless the duties" pertain

to his office. Council is without jurisdiction to legislate in regard to them. Whether they do pertain to his office is determined by the statutes in which the duties of his office are defined; and as we find in the statutes no reference, either direct or remote, to the exercise by the clerk of the power of appointment to care for the city hall, and nothing in the statutes which in any way connects him with that subject matter, it necessarily follows that he cannot have imposed upon him by council such power of appointment.

It is contended however, that even if he cannot have such duties imposed upon him, nevertheless he may accept the discharge of such duties, and if he does, his acts are legal, and that his acts in such case would be analogous to those of a court upon which there had been imposed duties that were extrajudicial and which it could not be compelled to discharge, yet if discharged, its acts are lawful and valid. We do not think the cases are analogous. In this case, the question is not simply can the duties be imposed upon the clerk, but rather can the clerk be clothed with such power? Has the clerk the legal capacity to receive such power? If he has not, then any payment of money to his appointee is a "misapplication of the funds" of the corporation. We are of the opinion that the clerk cannot be clothed with such power because of his legal incapacity to receive and exercise it.

Assuming therefore, that secs. 2561 and 2562, are in full force and unaffected by any subsequent legislation, we are of the opinion that the ordinance of April, 1897, is null and void for two reasons:

1. The board of legislation itself, must exercise this power of appointment, and cannot delegate its exercise to any other officer.

2. Such power cannot be delegated to the city clerk, because he is without power to receive it.

The opinion in this case might conclude here, but as other questions have been argued before us, and counsel for plaintiff in error in view of the public nature of the questions involved and the near adjournment of the court, have expresed as wish that the court should express an opinion upon them, a majority of the court have felt it proper to comply with the request.

But are secs. 2561 and 2562, still in full force as far as the city of Cincinnati is concerned? Have they been in fact repealed by subsequent legislation?

In 1894, the general assembly passed what is popularly known in Cincinnati as "the new charter" which consisted of the enactment of certain new sections, and the amendment of a number of old ones of the Rev. Stats., by means of which the form of government in cities of the first grade and the first class was materially changed.

Among these sections was sec. 1655a., which relates to the board of legislation which was the successor of council. Among the provisions found in this section, is the following:

"The board shall annually elect a president and vice president from its own body and shall at the expiration of the term of the city clerk, also elect a city clerk who shall be the clerk of the board, and shall serve as hereinafter provided; but the board shall not have power to choose, select or appoint any other officer or employe whatsoever."

This language of inhibition against the appointment of officers and employes by the board of legislation, is as sweeping as it could be made. It declares that the board shall not have power to choose and then in order to remove any doubt adds the verbs, "select, or appoint," thus covering every possible mode of designating one to serve it; and this inhibition extends not only to officers, but also to employes, and as if the designation of these two classes might still leave a class unprovided for, adds the word "whatsoever."

It is contended for plaintiff in error, that this inhibition is limited to persons who are to serve the board while in session and acting in its strictly legislative capacity, thus excluding the right to appoint pages, etc. And confining its right to the selection of a president, vice president and clerk.

We cannot bring ourselves to believe that this narrow construction properly expresses the legislative intention. Had such been the intention, we think it would have been expressed in language less sweeping and with some reference to the particular subject matter with respect to which it was to be restricted in its application. On the contrary we are of the opinion that this clause was intended to emphasize the purpose of the framers of the new charter, that the respective, executive and legislative and administrative functions of the city government should be distinct and independent of one another; that the board of legislation should confine its time and labor to the consideration of matters which were purely legislative in their character, and that this end could best be accomplished by conferring the appointing powers upon that department or departments of the government which were executive or administrative in their character.

Whatever therefore by virtue of secs 2560 and 2562, may be the powers of the board of legislation when it becomes necessary to construct or add to a city hall, we are of the opinion that when the hall is completed, the board of legislation can exercise no power of appointment with reference to the officer or employes who are to care for it.

It is urged as an objection to this construction of sec. 1655a,—that as it takes away from the board of legislation the power to appoint such officers or employes, no provision is left by which such officers or employes may be appointed, and the city hall must therefore be without such officers and employes. We don't think that such a result follows from this construction of sec. 1655a.

We think that the provisions of sec. 2562, which declares that "such hall when completed shall be under the control of the council" is still in force, but that such

power of control is abridged to the extent that it cannot itself appoint the officers or employes to care for it.

Whether the power to appoint can be con ferred on any other officer or officers of the corporation than the mayor, we do not now determine because the question as to the power to confer it upon any other officer than the city clerk, has not been discussed before us, and we have made no careful examination of the statutes to see whether it could be done. But as the question as to the power to confer it upon the mayor, as was done by the ordinance which was repealed by the or dinance of April, 1897, has been discussed, we have considered that question, and we are of the opinion that such power can be so conferred.

When by ordinance the board of legislation has created certain positions which are to be filled by those who are to have charge of the city hall for the purpose of keeping it safe and clean, then if the persons filling such positions are "officers" within the meaning of that word as used in the muni cipal code, the mayor alone can exercise the power of appointment to fill the same, because it is declared in sec. 1711, that:

"Except as otherwise provided in this title, the appointment to every office created by law or ordinance, shall be made by the mayor with the advice and consent of the council; the concurrence of a majority of all the members elected shall be required to confirm an appointment and in every vote resulting in confirmation the names of those voting and how they voted shall be recorded."

And if the persons filling such positions are not officers, the mayor by ordinance may be compelled to make appointments to them because it is declared in sce. 1746 Rev. Stats., that:

"He, (the mayor) shall perform the duties prescribed by the by-laws and ordinances of the corporation; and it shall be his special duty to see that all ordinances, by-laws and resolutions of the council, are faithfully obeyed and enforced."

It has been admitted at the bar by counsel for the defendant, that if the ordinance of April, 1897 is void, that part of the ordin ance which repealed the prior ordinance, is also void, and that the prior ordinance which gave the power of appointment to the mayor is revived, and therefore is now and always has been in force.

As this question has not been argued at the bar and there has been no time since yesterday when the case was submitted to us to make a proper examination of the question, speaking for myself, I am not prepared to express an opinion upon it. Furthermore, it nowhere appears in this record that there was a prior ordinance, nor that the plaintiff in error had also been appointed under that ordinance, although in the briefs it is stated that such are the facts, an expression of opinion upon the question therefore, would be merely obiter dicta, and that without hearing argument upon the question.

For the same reasons I do not feel warranted at this time in expressing an opinion upon the question whether if such ordinance is revived and the plaintiff in error had been appointed under that ordinance until October, 1897, he is now in office by virtue of that appointment until that time; or whether by this proceeding he is prevented in the future from raising that question.

The sole question presented by the case, is whether the ordinance of April, 1897, is void, and whether the plaintiff in error can be paid a salary for services performed in the discharge of the duties of an appointment made under that ordinance. We are all of the opinion that the ordinance is void; that no payment can be made under such ordinance, and that the judgment of the court in special term should be affirmed.

Judge Hollister concurs in the decision, holding that the ordinance of April 26th, 1897, is invalid. He also thinks that the public questions involved, warrant the court in complying with the request of counsel for plaintiff in error, that an opinion be given on the question where the appointing power is lodged, although that issue is not directly raised on the pleadings—whether in the Board of Legislation, or in the Mayor; and on that question his views coincide with those expressed by Judge Smith.

He is further of opinion that, as the ordinance of April 26th, 1897, is invalid, its repealing clause is inoperative for the reason that the new ordinance was clearly intended by the Board of Legislation to be a substitute for the old, and the old was repealed to give effect to the new, and for no other reason.

Hence, the ordinance of January 6th, 1893, under which Mayor J. A. Caldwell appointed Robert W. Lillard, superintendent of the city hall, is still in force. For this conclusion there is ample authority.

Mr. Hertenstein, counsel for Mr. Lillard, states the fact to be that the term for which Mr. Lillard was appointed will not expire until October next. If Mr. Hertenstein's information is correct, Judge Hollister is of the opinion that Mr. Lillard is now, and will be, until the expiration of his term, the legally appointed superintendent of the City Hall; but on the question whether or not the injunction in this case restraining the City Auditor and City Treasurer from paying Mr. Lillard his salary after July 16th, would estop Mr. Lillard from drawing his salary after that time and until the end of his term, no opinion is expressed.

HUNT, J.

The sole question presented in this case is the legality of the ordinance of April 26th, 1897, providing for the appointment of a Superintendent and their employes of the City Hall.

I concur in the opinion of the majority of the court, that the judgment of the court in special term should be affirmed, for the reason that no power is vested in the Board

of Legislation to pass an ordinance in question, and that the clerk is incapable of being clothed with such appointing power.

No other question can arise in the records and pleadings, nor do I understand that there was a request from all of counsel, that matters should be considered outside of the record.

The question as to where the appointing power is vested, as to whether the prior ordinance would be revived by declaring the ordinance of April 26th, 1897, null and void in my judgment, should be considered by the court when presented to a proper case, or when counsel may unite in a request for such a purpose.

Frederick Hertenstein, for plaintiff.

Wm. M. Ampt, for defendant.